## Daniel K. FERREIRA

v.

**Michael FAIR, Commissioner of Corrections, Commonwealth of Massachusetts, and Francis X. Bellotti, Attorney General, Commonwealth of Massachusetts.**

**Civ. A. No. 83–531–Z.**

United States District Court, D. Massachusetts.

Oct. 17, 1983.

---

Daniel E. Callahan, Massachusetts Defenders Committee, Boston, Mass., for petitioner.

Linda G. Katz, Asst. Atty. Gen., Boston, Mass., for respondents.

## MEMORANDUM OF DECISION

ZOBEL, District Judge.

Petitioner, Daniel K. Ferreira, was convicted of first degree murder following a jury trial, and his conviction was affirmed by the Massachusetts Supreme Judicial Court, *Commonwealth v. Ferreira,* 381 Mass. 306, 409 N.E.2d 188 (1980). Petitioner now seeks a writ of habeas corpus pursuant to 28 U.S.C. sec. 2254, alleging that his conviction was obtained in violation of his due process rights. Specifically, petitioner asserts three constitutional errors at trial:

(1) the trial judge erroneously limited the admission of testimony of defense witnesses concerning statements made to them by petitioner's companion to impeachment of the companion's testimony;

(2) the trial judge erroneously permitted petitioner to be impeached by his silence after having been given the *Miranda* warnings;

(3) the prosecutor committed error in closing argument by commenting on petitioner's failure to testify and by indicating his own belief in petitioner's guilt.

### FACTS

The main issue at trial was whether the defendant or his companion Joseph Silva committed the murder. The Commonwealth offered two eyewitnesses to prove that the defendant was guilty—Fall River police officer Robert Fortin and Joseph Silva.

Fortin testified that in the early morning hours of July 23, 1973 he observed a police cruiser driven by Officer Ruggiero following a black Cadillac which did not have its headlights on. The Cadillac turned onto Boutwell Street and pulled into a parking lot. The police car stopped in the middle of Boutwell Street adjacent to the parking lot. Fortin was standing at the top of Boutwell Street, approximately two hundred feet away.

As he watched, two men ran from the Cadillac toward the cruiser. The shorter of the two men (later identified as the defendant) approached the driver's window; the taller man (later identified as Silva) was approximately one and one-half feet behind him. Fortin then saw flashes go from the middle of the shorter man into the police car and heard four or five gun shots. Fortin could not see a gun in the hands of either man.

The two men ran back to the Cadillac and sped past Fortin. Fortin, who knew both the petitioner and Silva, recognized petitioner as the passenger and Silva as the driver. When the car was within ten to fifteen feet of Fortin, he saw petitioner point a gun at him, but no shots were fired. Fortin ducked behind a car and fired his gun at the Cadillac as it drove away, hitting a taillight and the trunk.

Silva testified for the Commonwealth. He and petitioner began drinking on the morning of July 22 and continued throughout the day in various Fall River establishments. After the bars closed, the men continued to drink at the homes of friends. They then stopped at petitioner's apartment. Petitioner went into the apartment alone and returned shortly with a gun. He got back into the car, which Silva was driving.

After leaving petitioner's apartment, Silva noticed that he was being followed by a police car. He turned onto Boutwell Street and stopped in a parking lot, hoping to avoid an arrest for drunk driving which he feared would lead to the loss of his truck driver's license. He and petitioner walked to the police car, with petitioner five or six feet ahead. When petitioner reached the window of the cruiser, Silva saw him fire several shots into the car. Silva said that petitioner had no reason to kill Ruggiero and did so simply because petitioner was "nuts." After the shots were fired, both men ran back to the Cadillac and drove to Silva's apartment, where both were later arrested.

The defendant called several witnesses on his behalf. Robert Luiz testified that about a week prior to the crime, Silva asked him where he could purchase a gun. Luiz answered that he did not know.

Frank Souza testified that when both Silva and petitioner were at Souza's house about an hour or two before the shooting, Silva said: "These cops are on my ass, and I'm going to shoot a f...ing cop before the night is out." Silva then lifted his shirt to reveal a gun. Petitioner was out of the room when this incident took place. The trial judge instructed the jury that the statements attributed to Silva were to be considered only to impeach Silva's credibility. Silva denied making either statement or having a gun on the night of the shooting. The petitioner did not testify.

## DISCUSSION

■ Petitioner contends, first, that the trial judge erred by allowing Silva's statements to Souza and Luiz to be used only for impeachment. This claim is without merit. Petitioner's reliance on *Chambers v. Mississippi*, 410 U.S. 284, 93 S.Ct. 1038, 35 L.Ed.2d 297 (1973) and *Green v. Georgia*, 442 U.S. 95, 99 S.Ct. 2150, 60 L.Ed.2d 738 (1979) is misplaced. In contrast to those cases, in the instant case the exculpatory evidence was not withheld from the jury; rather, its use was limited to impeachment of Silva. As the Supreme Judicial Court correctly noted, when Silva denied making the statements attributed to him "he created a situation in which evidence impeaching this testimony was logically equivalent to evidence asserting substantively that Silva did make such a statement ...." *Commonwealth v. Ferreira*, 409 N.E.2d at 193 n. 8. Moreover, the hearsay statements in this case did not bear "persuasive assurances of trustworthiness," a decisive factor in *Chambers*, 410 U.S. at 302. Finally, the statements here, even if believed, are not inconsistent with petitioner's guilt, as the confession in *Chambers* and *Green* were. Thus, "[t]he record before us will not support a conclusion that the exclusion of this hearsay unfairly deprived defendant of an opportunity to present his theory of the case to the jury." *United States v. Pena*, 527 F.2d 1356, 1362 (5th Cir.) (upholding exclusion of hearsay statement that informant had framed defendant), *cert. denied*, 426 U.S. 949, 96 S.Ct. 3168, 49 L.Ed.2d 1185 (1976).

■ Petitioner's claim that the trial judge erred in admitting testimony that petitioner remained silent following the *Miranda* warnings is also without merit. The arresting officer testified that petitioner was given his *Miranda* warnings and then stated: "I asked him if he understood them, he did not answer." This response did not indicate that petitioner chose to exercise his right to remain silent, only that he did not answer when asked if he understood his rights. The prosecutor made no attempt to use this response as evidence of guilt or to impeach the petitioner. In addition, the trial judge instructed the jury in his charge that no inferences should be drawn from the petitioner's silence in the face of *Miranda* warnings. There was no error.

■ Petitioner's objections to the prosecutor's closing argument are more substantial. He claims that the prosecutor committed constitutional error by commenting on the failure of the petitioner to testify and by stating his personal belief in petitioner's guilt. Comments by the prosecutor or the court drawing an adverse inference from the silence of an accused are proscribed by the Fifth and Fourteenth Amendments. *See Griffin v. California*, 380 U.S. 609, 615, 85 S.Ct. 1229, 1233, 14 L.Ed.2d 106 (1965). In determining whether a defendant's Fifth Amendment rights have been infringed, a court must examine "whether the language used was manifestly intended or was of such character that the jury would naturally and necessarily take it to be a comment on the failure of the accused to testify." *Lussier v. Gunter*, 552 F.2d 385, 389 (1st Cir.) (quoting *Knowles v. United States*, 224 F.2d 168, 170 (10th Cir.1955)), *cert. denied*, 434 U.S. 854, 98 S.Ct. 171, 54 L.Ed.2d 124 (1977); *see also Borodine v. Douzanis*, 592 F.2d 1202, 1210 (1st Cir.1979). Because statements bearing indirectly on a defendant's silence are not per se unconstitutional, *see Lockett v. Ohio*, 438 U.S. 586, 594–95, 98 S.Ct. 2954, 2959–60, 57 L.Ed.2d 973 (1978); *Hearn v. Mintzes*, 708 F.2d 1072, 1077 (6th

Cir.1983), the full context of the challenged comments must be examined in applying this test. In this case, although the prosecutor's comments were inappropriate, after considering the totality of the circumstances, they were not so egregious as to constitute a constitutional deprivation.

The prosecutor's statement primarily objected to by petitioner was as follows:

> You know, in the final analysis, the case you have heard over these eight days of trial comes down to depending on what you believe happened on Boutwell Street. And the only evidence that you have actually heard, the only evidence that you have actually heard of what happened that night back in July of 1973, came from two witnesses for the government—Officer Robert Fortin and Jo-Jo Silva.

Petitioner contends that because, other than the government witnesses, only he was in a position to testify as to what happened on Boutwell Street, the prosecutor's remark was an oblique reference to petitioner's silence at trial. This remark standing alone might have escaped the jury's attention; the danger of prejudice was aggravated, however, when, following defense counsel's objection, the trial judge explicitly adverted to the possible inference that could be drawn from the prosecutor's statement, apparently in the presence of the jury.[1]

Although the trial judge did not give curative instructions immediately following the prosecutor's improper remarks, as would have been preferable, see, e.g., Ra-

per v. Mintzes, 706 F.2d 161, 166–67 (6th Cir.1983); Lussier v. Gunter, 552 F.2d at 389, he did tell the jury in his final charge that no adverse inference could be drawn from a defendant's decision not to testify. As the Supreme Judicial Court noted, the judge's instructions were clear and complete. Commonwealth v. Ferreira, 409 N.E.2d at 195. The First Circuit has held that appropriate final instructions are sufficient to obviate the risk of prejudice from a prosecutor's improper references to a defendant's silence. See, e.g., Borodine v. Douzanis, 592 F.2d 1202, 1211 (1st Cir. 1979); Lussier v. Gunter, 552 F.2d at 389.

Moreover, it is significant that defense counsel himself made comments in his closing argument which could have called the jury's attention to the petitioner's absence as a witness. In summarizing the evidence of what happened immediately prior to the shooting, he stated: "Well, at about this point, we have to pretty much rely upon what Jo-Jo Silva says, with the exception that we have observations being made by Officer Fortin ...." A little later he said: "We don't know what happened right there from anybody except Joseph Silva." Because the defense attorney may have himself underscored petitioner's silence at trial, see Lockett v. Ohio, 438 U.S. 586, 595–96, 98 S.Ct. 2954, 2959–60, 57 L.Ed.2d 973 (1978); Butler v. Rose, 686 F.2d 1163, 1173 (6th Cir.1982), and in light of the judge's charge to the jury, I conclude that the prosecutor's improper comments did not constitute error of constitutional magnitude.

---

1. Following the defense counsel's objection, the following colloquy occurred:

Defense counsel: "I object to this line of argument, respectfully."

The prosecutor: "This is argument, Your Honor."

The judge: "No, but I will have to explain the absence of testimony of the defendant, if that's what you are driving at."

Defense counsel: "That is, Your Honor, what I am driving at."

The prosecutor: "I haven't made any reference to the defendant."

Defense counsel: "In the context of this trial, that's the only way it could be interpreted, that line of argument."

The judge: "I certainly will instruct the jury as to the right of the defendant to testify or not testify."

The prosecutor: "Your Honor, may I finish my argument?"

The judge: "Go ahead. But I think [defense counsel] was under the impression you were going to relate to the failure of the testimony —"

The prosecutor: "I am not going to mention anybody. I have told the only evidence we have heard of what happened that night came from Jo-Jo Silva, as he said himself, and Robert Fortin."

Defense counsel: "My exception to that line of argument."

Petitioner last argues that the prosecutor committed error by stating his personal opinion as to petitioner's guilt and the credibility of the witnesses. Although the prosecutor's remarks were wholly inappropriate, I conclude that they were not such as to deprive petitioner of a fair trial. Upon defense counsel's objection, the judge immediately told the jury that the opinion of counsel is not to be considered. In his final charge he further instructed the jury that arguments of counsel are not evidence. In the context of these repeated admonitions and the trial as a whole, the prosecutor's remarks were not unduly prejudicial. *See Soap v. Carter*, 632 F.2d 872, 877 (10th Cir.1980) (characterizing prosecutor's statement of personal belief in defendant's guilt as "a minor trial error"), *cert. denied*, 451 U.S. 939, 101 S.Ct. 2021, 68 L.Ed.2d 327 (1981); *Zemina v. Solem*, 438 F.Supp. 455, 465 (D.S.D.1977), *aff'd*, 573 F.2d 1027 (8th Cir.1978).

The prosecutor's conduct in this case cannot be condoned. Nonetheless, "the scope of our review of a state court proceeding is 'the narrow one of due process.'" *Borodine v. Douzanis*, 592 F.2d 1202, 1209 (1st Cir.1979). As the Supreme Court has observed, "[n]ot every trial error or infirmity which might call for application of supervisory powers correspondingly constitutes failure to observe that fundamental fairness essential to the very concept of justice." *Donnelly v. DeChristoforo*, 416 U.S. 637, 642, 94 S.Ct. 1868, 1871, 40 L.Ed.2d 431 (1974). The prosecutor's misconduct in this case did not deprive petitioner of a fair trial. Accordingly, I accept the recommendation of the Magistrate. Judgment may be entered denying the petition for a writ of habeas corpus.