Daniel K. **FERREIRA**, Petitioner, Appellant,

v.

Michael **FAIR**, et al., Respondents, Appellees.

No. 83–1833.

United States Court of Appeals, First Circuit.

Argued March 9, 1984.

Decided April 19, 1984.

Daniel E. Callahan, Boston, Mass., for petitioner, appellant.

Linda G. Katz, Asst. Atty. Gen., Boston, Mass., with whom Francis X. Bellotti, Atty. Gen., Frederick W. Riley, Asst. Atty. Gen., Chief, Criminal Bureau, and Barbara A.H. Smith, Asst. Atty. Gen., Chief, Criminal

Appellate Division, Boston, Mass., were on brief, for respondents, appellees.

Before COFFIN, BOWNES and BREYER, Circuit Judges.

BOWNES, Circuit Judge.

Petitioner, Daniel K. Ferreira (Ferreira), was convicted of first degree murder following a jury trial, and the Massachusetts Supreme Judicial Court affirmed the conviction. *Commonwealth v. Ferreira,* 381 Mass. 306, 409 N.E.2d 188 (1980). Petitioner sought a writ of habeas corpus in the United States District Court for the District of Massachusetts under 28 U.S.C. § 2254. The district court denied the writ, 578 F.Supp. 638, and petitioner brings this appeal.

Petitioner argues that his conviction was unconstitutional on three grounds: (1) the trial court restricted certain statements allegedly made by Ferreira's companion for the purpose of impeachment only; (2) the trial court permitted the prosecution to refer to petitioner's silence after his constitutional rights were read to him by the police; and (3) the prosecutor acted improperly in closing argument by commenting on Ferreira's failure to testify and by indicating a personal belief in Ferreira's guilt.

The main issue at trial was whether the murder was committed by Ferreira or his companion, Joseph Silva. The Commonwealth offered eyewitness testimony from Silva and a police officer, Robert Fortin, to prove that Ferreira was guilty.

Fortin testified that in the early morning hours of July 23, 1973, he observed a police cruiser driven by Officer Ruggiero following a black Cadillac which did not have its headlights on. The Cadillac turned onto Boutwell Street and pulled into a parking lot; the police car stopped in the middle of Boutwell Street adjacent to the parking lot. Fortin, standing at the top of Boutwell Street, some two hundred feet away, saw two men run from the Cadillac toward the cruiser. The shorter of the two men (later identified as Ferreira) approached the driver's window with the taller man (later identified as Silva) approximately one and one-

half feet behind him. Fortin then saw flashes go from the middle of the shorter man into the police car and heard four or five gun shots. Fortin could not see a gun in the hands of either man. The two men ran back to the Cadillac and sped past Fortin, who identified petitioner as the passenger and Silva as the driver. When the car was within ten to fifteen feet of Fortin, he saw Ferreira point a gun at him, but no shots were fired. Fortin ducked behind a car and fired his gun at the Cadillac as it drove away, hitting a taillight and the trunk.

Silva testified that he and Ferreira began drinking on the morning of July 22 and continued throughout the day in various establishments and at the homes of friends. They then stopped at Ferreira's apartment. Ferreira went into the apartment alone, returned shortly with a gun, and got back into the car, which Silva was driving. Silva, noticing that he was being followed by a police car and hoping to avoid an arrest for drunk driving, turned onto Boutwell Street and stopped in a parking lot. Ferreira walked to the police car, with Silva five or six feet behind. When Ferreira reached the window of the cruiser, Silva saw him fire several shots into the car. Silva said that Ferreira had no reason to kill Ruggiero and did so simply because he was "nuts." After the shots were fired, both men ran back to the Cadillac and drove to the vicinity of Silva's apartment. Silva left Ferreira sitting in the car and went into his apartment where he was later arrested. Ferreira was apprehended hiding in the grass a few feet from Silva's Cadillac.

The petitioner himself did not testify, but called several witnesses on his behalf. Robert Luiz testified that about a week prior to the crime Silva asked him where he could purchase a gun and Luiz answered that he did not know. Frank Souza testified that when both Silva and Ferreira were at Souza's house an hour or two before the shooting, and Ferreira was out of the room, Silva said, "These cops are on my ass, and I'm going to shoot a f...ing

cop before the night is out," and lifted his shirt to reveal a gun. The trial judge instructed the jury that the statements attributed to Silva were to be considered only to impeach Silva's credibility. Silva denied making either statement or having a gun on the night of the shooting.

Petitioner contends that the trial court erred in restricting Souza's and Luiz's testimony concerning Silva's alleged statements to impeachment and in instructing the jury that the statements could not be considered as affirmative evidence. Petitioner insists that, because it was established that he and Silva were the only two persons next to the police cruiser at the time Officer Ruggiero was shot, any evidence tending to incriminate Silva operated *pro tanto* to exculpate Ferreira.

■ Souza's testimony was clearly admissible for impeachment purposes, and would "normally" be admissible substantively as a statement of present intent under the hearsay rule. *Commonwealth v. Ferreira,* 409 N.E.2d at 193. The Supreme Judicial Court held, however, that the error, if any, in excluding Souza's testimony as affirmative evidence was not of constitutional scope. It pointed out that the jury was made fully aware of petitioner's defense theory, that there was no testimony that Silva, rather than Ferreira, did the shooting, and that evidence of Silva's purported intent to kill a police officer was "not inconsistent with a finding that [Ferreira] had a similar intent or that [Ferreira] did the actual shooting." *Id.* 409 N.E.2d at 194.

Even assuming for present purposes that the trial court's evidentiary ruling was erroneous, we do not think that the "ultimate impact" of the ruling amounted to a deprivation of due process. *See Chambers v. Mississippi,* 410 U.S. 284, 298, 93 S.Ct. 1038, 1047, 35 L.Ed.2d 297 (1973). The evidence in question, *viz.* Souza's testimony that Silva threatened to "shoot a f...ing cop," bears none of the indicia of substantial trustworthiness that were crucial in *Chambers:* at no time after the shooting did Silva so much as hint that he, rather

than Ferreira, had killed Ruggiero; the statement was not against his interest at the time he allegedly made it; and there was no corroboration. Moreover, to view Silva's statement as indicating that Ferreira did not shoot Ruggiero would require a chain of tenuous inferences in which we decline to indulge. In the face of Fortin's eyewitness testimony, we think the probative impact of Souza's testimony as affirmative evidence would have been minimal. Any error in excluding it was not of constitutional import, and thus does not warrant overturning the conviction on collateral review. *See Cupp v. Naughten,* 414 U.S. 141, 146, 94 S.Ct. 396, 400, 38 L.Ed.2d 368 (1973); *Niziolek v. Ashe,* 694 F.2d 282, 287 (1st Cir.1982).

■ There was also no error in the trial court's similar limitation on Luiz's testimony. Silva's alleged inquiry after a gun, one week before the crime, was properly excluded as irrelevant to any issue before the state court.

Petitioner also claims that the trial court erred in admitting testimony concerning his silence in response to *Miranda* warnings. Having testified that petitioner was given his *Miranda* warnings at the time of arrest, one of the arresting officers stated: "I asked him if he understood them, he did not answer."

■ In the context of an arrest followed by *Miranda* warnings, it is clear that "use for impeachment purposes of petitioner's silence ... violate[s] the Due Process Clause of the Fourteenth Amendment." *Doyle v. Hall,* 426 U.S. 610, 619, 96 S.Ct. 2240, 2245, 49 L.Ed.2d 91 (1976). Here, however, Ferreira's silence was not "in the face of accusation," *Miranda v. Arizona,* 384 U.S. 436, 468 n. 37, 86 S.Ct. 1602, 1624 n. 37, 16 L.Ed.2d 694 (1966), nor did the prosecutor make use of this silence, either substantively or for impeachment. The officer merely stated as part of his narrative testimony that Ferreira did not respond when asked if he understood his rights. The trial court expressly instructed the jury that petitioner's silence in the face

of *Miranda* warnings "may not be considered against him." We find no merit in this claim.

■ Petitioner contends that the prosecutor indirectly commented on his failure to testify, and thus abridged his privilege against self-incrimination. The prosecutor said in closing argument to the jury:

> Have in mind one more thing. The evidence from the only two people who testified what happened on Boutwell Street was that the police car started to move off.... [I]f it moved, the only evidence you have shows ....
>
> . . . .
>
> You know, in the final analysis, the case you have heard over these eight days of trial comes down to depending on what you believe happened on Boutwell Street. And the only evidence that you have actually heard, the only evidence that you have actually heard of what happened that night back in July, of 1973, came from two witnesses for the government—Officer Robert Fortin and Jo-Jo Silva.

The prosecutor's remarks were not "manifestly intended" as a "comment on [petitioner's] failure ... to testify," nor, we think, would a jury "naturally and necessarily" take them as such. *Knowles v. United States*, 224 F.2d 168, 170 (10th Cir. 1955), *quoted in Lussier v. Gunter*, 552 F.2d 385, 389 (1st Cir.), *cert. denied*, 434 U.S. 854, 98 S.Ct. 171, 54 L.Ed.2d 124 (1977). Any conceivable reference to the defendant's decision not to testify was oblique and made in passing. Moreover, the jury was given proper curative instructions. The statements could not reasonably have enhanced any unfavorable inference the jury might draw of its own accord from the petitioner's refusal to take the stand in his own defense. *See Lockett v. Ohio*, 438 U.S. 586, 595, 98 S.Ct. 2954, 2959, 57 L.Ed.2d 973 (1978); *Butler v. Rose*, 686 F.2d 1163, 1173 (6th Cir.1982).

Finally, petitioner objects to the prosecutor's remarks in closing argument concerning his personal opinion as to petitioner's guilt and the credibility of witnesses. The prosecutor harangued the jury as follows:

> [L]et me tell you, it is my opinion, based on being in the courts for a long time that the government in this case ... [has] sustained the burden of proof ....
>
> . . . .
>
> That's the evidence [*i.e.*, testimony of a prosecution witness] that you are going to have to weigh. That's the evidence that you are going to have to believe.
>
> . . . .
>
> I am convinced that you likely will conclude that [defense witnesses Souza and Luiz] were lying.
>
> . . . .
>
> The evidence you have, ... I believe and so state, unquestionably and beyond all doubt points to the fact that [Ferreira] killed [Ruggiero] ....

■ We have repeatedly noted that "it is improper for the prosecutor to inject his personal beliefs about conclusions to be drawn from the evidence into his argument to the jury." *United States v. Flaherty*, 668 F.2d 566, 597 (1st Cir.1981). However, we have no supervisory authority over state courts and may review their proceedings only for constitutional error. *Smith v. Phillips*, 455 U.S. 209, 221, 102 S.Ct. 940, 948, 71 L.Ed.2d 78 (1982). In cases of alleged prosecutorial misconduct, the "touchstone of due process analysis ... is the fairness of the trial, not the culpability of the prosecutor." *Id.* at 219, 102 S.Ct. at 947. Although improper argument by the prosecution may sometimes rise to the level of constitutional error, *United States v. Brown*, 451 F.2d 1231, 1236 (5th Cir.1971), Fed.R.Crim.P. 52(a), "not every trial error or infirmity which might call for application of supervisory powers correspondingly constitutes a 'failure to observe that fundamental fairness essential to the very concept of justice.'" *Donnelly v. DeChristoforo*, 416 U.S. 637, 642, 94 S.Ct. 1868, 1871, 40 L.Ed.2d 431 (1974) (citation omitted).

■ We agree with the district court that the prosecutor's comments here, though thoroughly inappropriate, were not so egregious as to deprive petitioner of a

fair trial. Upon defense counsel's objection, the judge immediately told the jury that the personal opinion of counsel was not to be considered. In his final charge he further instructed the jury that arguments of counsel are not evidence. We find no constitutional error in the prosecutor's comments.

*Affirmed.*