UNITED STATES of America, Appellee,

v.

**Corrado BONFANT,**
**Defendant, Appellant.**

UNITED STATES of America, Appellee,

v.

**Mary A.Z. INGSTER,**
**Defendant, Appellant.**

Nos. 87–1553, 87–1554.

United States Court of Appeals,
First Circuit.

Heard April 5, 1988.
Decided July 8, 1988.

See also 660 F.Supp. 509.

Jeffrey M. Williams, for defendant, appellant Corrado Bonfant.

William A. Brown with whom Brown & Prince, Boston, Mass., was on brief, for defendant, appellant Mary A.Z. Ingster.

Juan A. Pedrosa, Asst. U.S. Atty., with whom Daniel F. Lopez–Romo, U.S.Atty., Hato Rey, P.R., and Antonio R. Bazan, Asst. U.S. Atty., Crim. Div., were on brief, for appellee.

Before BOWNES, BREYER and TORRUELLA, Circuit Judges.

TORRUELLA, Circuit Judge.

Appellants Corrado Bonfant and Mary A.Z. Ingster appeal their convictions on three counts of aiding and abetting each other to import, and to possess with intent to distribute, fourteen pounds of cocaine, in violation of 21 U.S.C. §§ 841(a)(1), 952(a), and 955. Bonfant claims his fifth amendment right to remain silent was violated, and Ingster claims the evidence was insufficient to convict her.[1] We disagree with both contentions.

I

Bonfant and Ingster were arrested by United States Customs officials while in transit in San Juan, Puerto Rico during the course of their planned return to Italy from Bolivia. Bonfant is an Italian national and

1. The parties also initially claimed that a search of their luggage in their airplane's baggage hold,

speaks little English or Spanish. His companion, Ingster, knows several languages and served as Bonfant's interpreter during their fateful trip to Bolivia. In particular, she offered to translate for the U.S. Customs official who was questioning Bonfant when he was stopped in San Juan. This service included reading to Bonfant his Miranda warnings after she had read hers. At trial, the government agent described this episode to the jury by stating, "I requested from her to read the rights to Mr. Bonfant in Italian and she did so <u>and she didn't want to sign the statement.</u>" (emphasis added). The government has offered no explanation as to why its agent uttered the underlined phrase. This comment implied that Ingster did not wish to waive her right to remain silent. It could be argued that it also implied that, since Ingster did not wish to talk, she had something to hide. By streching a point, one could therefore conclude that the government at trial used Ingster's exercise of her fifth amendment right to remain silent to incriminate her. *See Doyle v. Ohio*, 426 U.S. 610, 96 S.Ct. 2240, 49 L.Ed.2d 91 (1976). Ingster, however, makes no such argument. Instead, Bonfant does. Because the jury knew that his translator, Ingster, was Bonfant's "mouthpiece," he argues, the agent's comment also indicated Bonfant had refused to waive *his* right to remain silent. Such a connection is tenuous at best. Bonfant does not suggest that the agent implied Ingster refused to sign at Bonfant's direction, or that her refusal was because Bonfant, himself, did not want to waive his rights. A plain reading of this statement does not reveal a comment, implied or otherwise, upon Bonfant's exercise of his Fifth Amendment right to remain' silent. *Cf. Ferreira v. Fair*, 732 F.2d 245, 248–49 (1st Cir.1984) (no error when jury would not "naturally" take prosecutor's re-

marks as comment on defendant's silence and it is clear remarks were not intended as such).

 Bonfant's second claim of prejudice concerns the following comments of Ingster's counsel at closing, referring to her testimony on her own behalf:

> In short, ladies and gentlemen, the government has presented in its case in chief a series of facts; facts that if Ms Mary Zita Ingster did not take the stand I admit would be one-sided. They would be one-sided, but the fact remains ... ladies and gentlemen, had you just seen the government side of it, just the government side of it, I would concede to you that it would look very, very suspicious.

These comments, Bonfant claims, implied that since Bonfant did not testify, matters relating to him were one-sided and suspicious. This argument constitutes a very strained reading of the language used by his codefendant's counsel. In light of the fact that Ingster's testimony was the bulk of the evidence presented in favor of Bonfant, it is obvious to us, and should have been obvious to the jury, that Ingster's counsel was simply commenting on the probative value of Ingster's testimony and the overall weight of the evidence. Ingster's testimony was never prejudicial to Bonfant and was clearly designed to show his innocence. This situation is quite unlike that faced by the codefendant in *De Luna v. United States*, 308 F.2d 140 (5th Cir.1962). There, defendant's counsel explicitly referred to codefendant's failure to take the stand as evidence that all guilt belonged solely to the codefendant. Here, we believe the most obvious inference from the challenged statements of Ingster's counsel is that, because of Ingster's testimony, the government's case against *both* defendants was much more tenuous.

where the cocaine was found, violated United States customs regulations and, as a consequence, the fourth amendment. They also asserted that the district court lacked subject matter jurisdiction because appellants were "in-transit" passengers who never "entered" the United States for purposes of prosecution under 21 U.S.C. §§ 841(a)(1), 952(a), and 955. By the time of oral argument, however, the parties had

abandoned these arguments in recognition of recent decisions by this court. *See United States v. Franchi–Forlando*, 838 F.2d 585, 587–88 (1st Cir.1988) (search of luggage in baggage hold of in-transit aircraft not contrary to customs regulations); *United States v. McKenzie*, 818 F.2d 115, 118–19 (1st Cir.1987) ("in-transit" passengers subject to prosecution under 21 U.S.C. §§ 841(a)(1), 952(a), and 955).

We also note that Ingster's decision to testify on her own behalf, a risky undertaking, was an important factor which could have swayed the jury in her favor and which she should have been free to exploit on her own behalf. She did so tactfully and without referring for contrast to Bonfant's failure to testify. "The privilege against self-incrimination of a co-defendant who does not choose to testify does not go so far as to deprive one who does so choose of effective argument in [her] behalf, so long as it is, as it was here, sensitive to the rights of others." *Varela Cartagena v. United States*, 397 F.2d 278, 280 (1st Cir. 1968). The closing argument of Ingster's counsel fell well within this principle.[2]

■ Finally, we note that even if there was some remote possibility of prejudice to Bonfant, such a possibility is trivial when considered in light of the evidence against him. Approximately fourteen pounds of cocaine were found in a garment bag on which his name and address were affixed and for which he possessed a baggage claim ticket. The cocaine had been formed into ball shaped objects, surrounded by a layer of coffee, and placed inside green and white plastic bags. In Bonfant's other suitcase was more coffee in identical bags. Bonfant had entered Bolivia, a known drug source country, with $22,000 in cash and had left with only a few thousand dollars. He had no documentation to account for the over $18,000 left in Bolivia. While there was substantial evidence he had gone to La Paz, Bolivia on other, legitimate business, there was uncontroverted evidence that he had made a side-trip to Santa Cruz, a trip for which his interpreter and constant companion in Bolivia could offer no explanation. Finally, his principal hypothesis to explain the presence of the cocaine in his bag was that it may have been planted there with the assistance of a stewardess by her boyfriend, another traveler on the plane also arrested on cocaine charges.

However, the cocaine found in the possession of Bonfant's fellow smuggler was of a different chemical composition and was packed differently than that found in Bonfant's luggage, and there was no evidence the stewardess-girlfriend had any access to the baggage compartment of the airplane. In light of this overwhelming evidence against Bonfant, the very indirect commentary on his silence, if those statements can be so construed, was completely harmless.

## II

Ingster's sole argument on appeal is that the evidence against her was insufficient to sustain a finding of guilt.

■ To convict Ingster, the government had to show that she "associated [herself] with [Bonfant's criminal] venture, that [she] participated in it as something [she] wished to bring about, [and] that [she] sought by [her] actions to make it succeed." *United States v. Campa*, 679 F.2d 1006, 1010 (1st Cir.1982) (citations omitted). It is axiomatic that mere presence or knowledge is not sufficient to sustain a conviction for aiding and abetting; rather, she must have "shared in the principal's essential criminal intent." *Id.* Therefore, we must affirm her conviction only if we find, viewing all evidence in the light most favorable to the government, that a jury could have concluded beyond a reasonable doubt that she assisted Bonfant and shared his intent to bring about the successful completion of this criminal endeavor. *United States v. Cintolo*, 818 F.2d 980, 983 (1st Cir.), *cert. denied*, —— U.S. ——, 108 S.Ct. 259, 98 L.Ed.2d 216 (1987).

■ The evidence against Ingster was: (1) she stayed in the same hotel room with Bonfant during the two-week period in Bolivia when, as was shown beyond a reasonable doubt, Bonfant bought the cocaine and packed it into his garment bag; (2) she worked for Bonfant, who admittedly could not speak Spanish, as an interpreter for the

---

**2.** Unlike the case before us, this right to comment upon one's own testimony may clash with a codefendant's right to not have his or her silence referred to by other parties at trial. This potential clash of interests could be an important factor in a court's decision of whether to grant a motion to sever a codefendant's trial. *See Bruton v. United States*, 391 U.S. 123, 134–35, 88 S.Ct. 1620, 1626–27, 20 L.Ed.2d 476 (1968) (benefits of joint trials do not outweigh need to protect fundamental constitutional principles). No motion to sever was made at the trial below.

purpose of helping him conduct business in a Spanish speaking country; (3) she had left on her journey with $7200 and at the time of her arrest, after six days in Santo Domingo and two weeks in Bolivia, she had approximately $1000; (4) according to a United States Customs official, Ingster denied knowing Bonfant after she had offered to interpret for the official during his questioning of Bonfant; and (5) she denied, on cross-examination, any knowledge of a day trip by Bonfant to Santa Cruz, proven by a hotel receipt, after she had testified on direct examination that on that day she and Bonfant, in La Paz, had visited a Bolivian ministry, had lunch together at their hotel, spent the afternoon "until the shops closed" shopping, and spent the evening at their hotel.

We believe that his evidence could lead a jury to conclude beyond a reasonable doubt that Ingster knew of, and shared, Bonfant's intent regarding his cocaine smuggling scheme and that she endeavored to help it succeed. The fact that her own testimony indicated she spent nearly every moment with Bonfant while they were in Bolivia indicates that she most likely was aware of his activities while he was there. The testimony of the customs agent regarding Ingster's denial that she knew Bonfant suggests a guilty state of mind at the time of arrest. Her testimony detailing a day spent with Bonfant in La Paz when in actuality he was 400 miles away in Santa Cruz could convince the jury that because she was willing to lie about Bonfant's activities, she shared his intent. The uncontested fact that she was with Bonfant as an interpreter to help him with his business dealings in Bolivia could have convinced the jury, in light of the above evidence, that she actively assisted his endeavor to purchase the cocaine by serving as a translator in his dealings with Bolivian drug peddlers. The evidence against Ingster, therefore, was sufficient for the jury to conclude beyond a reasonable doubt that she aided and abetted Bonfant in his drug smuggling scheme.

Appellants' convictions are *affirmed*.