592 P.2d 181

**EL PASO ELECTRIC COMPANY, a Texas Corporation, et al., Plaintiffs-Appellees,**

v.

**REAL ESTATE MART, INC., et al., Defendants-Appellants.**

**EL PASO ELECTRIC COMPANY, a Texas Corporation, et al., Plaintiffs-Appellees,**

v.

**Stewart M. PINKERTON et ux., et al., Defendants-Appellants.**

**EL PASO ELECTRIC COMPANY, a Texas Corporation, et al., Plaintiffs-Appellants,**

v.

**Stewart M. PINKERTON et ux., et al., Defendants-Appellees.**

**Nos. 11869, 11992 and 12003.**

Supreme Court of New Mexico.

March 12, 1979.

Modrall, Sperling, Roehl, Harris & Sisk, George T. Harris, Jr., Alan K. Konrad, Albuquerque, for Real Estate Mart, et al., appellants.

I. M. Smalley, Deming, Martin, Martin & Lutz, James T. Martin, Jr., Stephen A. Hubert, Las Cruces, for El Paso Elec. Co., et al., appellees and appellants.

Bivins, Weinbrenner & Regan, Neil E. Weinbrenner, Las Cruces, Sizemore & Harris, El Paso, Tex., for Stewart M. Pinkerton, et ux., et al., appellants and appellees.

Leonard A. Helman, Public Service Commission, Santa Fe, for amicus curiae.

OPINION

SOSA, Chief Justice.

The main issues before the Court in this cause are: (1) Can a foreign public utility

exercise the power of eminent domain in New Mexico, and (2) Can a public utility acquire, by eminent domain, two 100 foot easements parallel and adjacent to each other for the erection of electrical transmission lines. We hold that under § 53--17--2, N.M.S.A.1978 (formerly § 51–30–2, N.M.S. A.1953 (Supp.1975)) a foreign public utility authorized to do business in New Mexico has the same right as a domestic public utility to exercise the power of eminent domain in New Mexico. We hold that a public utility may not, under the circumstances of this case, acquire two 100 foot easements parallel and adjacent to each other by using its power of eminent domain.

Plaintiffs-utilities, El Paso Electric Company (EPEC), a Texas corporation, Community Public Service Company (CPS), a Texas corporation, and Public Service Company (PNM), a New Mexico corporation, filed petitions in the District Courts of Dona Ana and Luna Counties seeking to condemn two parallel and adjacent 100 foot easements through defendants-landowners' property for the purpose of constructing and maintaining two 345 KV transmission lines.

Prior to filing the condemnation action, plaintiffs-utilities entered into a participation agreement known as the Southwest New Mexico Transmission Project for the purpose of constructing the two transmission lines and relative facilities to connect with both the San Juan power plant in the New Mexico Four-Corners area and the Palo Verde nuclear power plant currently under construction in northeastern Arizona. EPEC filed an application with the Public Service Commission on May 16, 1977, to obtain a certificate of public convenience and necessity. The Commission granted EPEC a certificate and location permit to construct, operate and maintain a 345 KV transmission line from the Luna Switching Station in Deming to the Newman Switching Station in Texas.

In the Dona Ana County proceeding, the district court denied defendants-landowners' motion to dismiss and held that EPEC and CPS could condemn a 100 foot easement for the first transmission line because

they had the power of eminent domain pursuant to § 53--17--2. The court ruled that plaintiffs could not proceed to condemn the easement for the second transmission line because no certificate of public convenience and necessity had been obtained. In the Luna County proceeding, the district court held that EPEC and CPS had the power of eminent domain and that the taking of two 100 foot easements for the construction of the transmission lines did not violate § 62–1–4, N.M.S.A.1978 (formerly § 68–1–4, N.M. S.A.1953 (Repl.1974)). The district courts granted the parties leave to apply for an interlocutory appeal to this Court on the above-mentioned issues. These causes have been consolidated and this decision is dispositive of both petitions.

■ Defendants argue that EPEC and CPS do not have the power to condemn real property in New Mexico under § 62--1–4 because they are not "organized under the general incorporation laws of this state" pursuant to § 62–1–1, N.M.S.A.1978 (formerly § 68–1–1, N.M.S.A.1953 (Repl.1974)). EPEC and CPS are both Texas corporations authorized to do business in New Mexico as public electric utilities under certificates of authority. Plaintiffs counter that among the rights granted a foreign public utility authorized to do business in New Mexico is the power of eminent domain. We agree.

In determining whether a foreign public utility may exercise the power of eminent domain in New Mexico, we consider §§ 53–17–2, 62–1–1, and 62–1–4. Section 53--17–2, which relates to powers of foreign corporations, provides in pertinent part:

A foreign corporation which has received a certificate of authority under the Business Corporation Act [53–11–1 to 53–18–12 NMSA 1978] shall, until a certificate of revocation or of withdrawal has been issued as provided in the Business Corporation Act, *enjoy the same, but no greater, rights and privileges as a domestic corporation* organized for the purposes set forth in the application pursuant to which the certificate of authority is issued . . . . (Emphasis added.)

Section 62· 1· 4 pertains to the power of eminent domain and provides:

*Such* corporations are hereby authorized to enter upon any lands belonging to the state or to persons . . . and from time to time to appropriate so much of such lands, *not exceeding a strip one hundred feet wide in any one place,* as may be necessary for their purpose . . . (Emphasis added.)

To ascertain the meaning of the word "such" in § 62–1–4, we look to § 62–1–1, which provides that:

Corporations for the generation, production, transmission, distribution, sale or utilization of . . . electricity . . *may* be organized under the general incorporation laws of this state. (Emphasis added.)

"Such corporations" referred to in § 62–1–4 means all public utilities authorized to do and doing business in New Mexico, some of which may choose to incorporate here and some of which may not. Had the Legislature intended otherwise, it would have used the word "must" in § 62–1–1.

In interpreting the legislative intent behind a statute, it is important to consider the history of the particular legislation. *State v. Gonzales,* 78 N.M. 218, 430 P.2d 376 (1976); *Bradbury & Stamm Const. Co. v. Bureau of Revenue,* 70 N.M. 226, 372 P.2d 808 (1962). Prior to the enactment of the Business Corporation Act in 1967, our statutes expressly granted public utilities, domestic and foreign, the power to condemn private real property. *See* §§ 51–10–1, 51–12–8, N.M.S.A.1953 (Repl.1962), and 68–1–4, N.M.S.A.1953 (Repl.1974). The 1967 Act superseded the 1905 general corporation statutes.

The question is whether or not the Legislature intended, by enactment of the 1967 General Business Corporation Act, to abrogate the power of eminent domain previously conferred upon foreign public utilities under prior statutes. Section 51–10–1, N.M.S.A.1953 (Repl.1962) was replaced by § 51–30–2, N.M.S.A.1953 (Supp.1975) [*now* § 53–17–2, N.M.S.A.1978]. Section 53–17–2 is a general business corporation statute; it gives a foreign corporation authorized to do business in New Mexico the same rights and liabilities granted to a domestic corporation of similar kind.

The Tenth Circuit was faced with a similar case in *Cline v. Kansas Gas and Electric Company,* 260 F.2d 271 (10th Cir. 1958). The landowner there challenged a condemnation action on the ground that the Kansas Gas and Electric Company (KGEC) was not vested with the power of eminent domain because it was a foreign corporation. KGEC was organized under the laws of West Virginia; but it was authorized to engage, and did engage, in the business of generating, transmitting, selling and distributing electricity to consumers in a number of counties in Kansas. The court found that KGEC was a public utility within the Kansas statutory provision defining a public utility as "every corporation for the production, transmission, delivery, or furnishing of heat, light or power." Kan.Stat. § 66–104 (1949). The court stated:

Section 17–505, General Statutes of Kansas 1949, provides in substance that every foreign corporation authorized to do business in the state shall be subject to the same provisions, judicial control, restrictions, and penalties, except as therein provided, as domestic corporations. And section 17–618 provides . . . that lands may be appropriated for the use of electric companies in the same manner as is provided for railway corporations . . . The two sections must be construed together. And when construed in that manner, they constitute an express legislative grant of power of eminent domain to an electric utility company organized under the laws of another state and authorized to do business in Kansas to obtain by condemnation a right-of-way across land for the construction thereon of an electric line for use in the conduct of its business of generating, transmitting, selling, and distributing electric energy for consumers generally. (Citations omitted).

*Id.* at 273–74. *See also Spears v. Kansas City Power and Light Co.,* 203 Kan. 520, 455 P.2d 496 (1969). We adopt this reasoning.

Among the powers granted to a public utility in §§ 62-1-1 and 62-1-4 is the power of eminent domain. Because § 53-17-2 grants a foreign corporation authorized to do business in our state the same powers as a domestic corporation of similar kind, it must necessarily confer on such corporations, absent any proviso to the contrary, the power of eminent domain. *See Gradison v. Ohio Oil Company,* 239 Ind. 218, 156 N.E.2d 80 (1959). We note that nowhere in the New Mexico Constitution is the Legislature prohibited from conferring upon a foreign corporation the right of condemnation. *Cf. Southwestern Gas & E. Co. v. Patterson Orchard Co.,* 180 Ark. 148, 20 S.W.2d 636 (1929).

Defendants argue that §§ 53-17-2 and 62-1-4 are in conflict with each other. We disagree. Sections 53-17-2 and 62-1-4 are in *pari materia.* We have previously stated that as long as the interpretation of a statute is reasonable and not in conflict with legislative intent, effect must be given, if possible, to the whole statute and every part thereof. It is the duty of the court, so far as practicable, to reconcile different provisions so as to make them consistent, harmonious, and sensible. *El Paso Electric Co. v. Milkman,* 66 N.M. 335, 347 P.2d 1002 (1959). We have also stated that where there is ambiguity created by statutes, the court will consider all existing statutes relating to the same subject so that, if possible, all of the acts will be operative. *Runyan v. Jaramillo,* 90 N.M. 629, 567 P.2d 478 (1977).

Sections 62-1-1 and 62-1-4 are also in *pari materia* with the Public Utilities Act, §§ 62-3-1 to 62-3-4, N.M.S.A.1978. Under that Act, the jurisdiction of the Public Service Commission extends to *any* utility doing business in New Mexico. Foreign public utilities authorized to do business here, such as EPEC and CPS, are subject to the same supervision as utilities incorporated under our statutes. Foreign public utilities pay the same taxes, are subject to the same type of examination, and must meet the same burdens when asking for rate relief as domestic utilities. It would be inconsistent to subject a foreign public utility to our laws and then to deny them the same rights and protections as those corporations originally domiciled in our state. For the foregoing reasons, we affirm the lower court's determination that EPEC and CPS have the power to exercise the power of eminent domain in our state.

■ The second issue presented in this cause is whether the 100 foot wide easement limitation contained in § 62-1-4 prohibits the condemnation of two 100 foot easements parallel and adjacent to each other. We hold that it does.

Section 62-1-4 is clear on its face. It limits the taking of land to a single strip not exceeding 100 feet in width, regardless of the number of transmission lines. Permitting plaintiffs to condemn two 100 foot easements parallel and adjacent to each other, or one easement 200 feet wide, for the purpose of erecting two transmission lines violates the wording of this section.

Defendants assert that the proper remedy available to plaintiffs is to seek an amendment of § 62-1-4 by the Legislature. We agree. The granting of the power of eminent domain, and the parameters thereto, is a matter of public policy for the Legislature's determination. *See* 26 Am. Jur.2d *Eminent Domain* § 5 (1966); 1 Nichols' *The Law of Eminent Domain* § 3.21 (1976).

In enacting § 62-1-4 and delegating the state's inherent power of eminent domain to public utilities, the Legislature determined that easements in excess of 100 feet could never be necessary. Although this legislative determination was first made in 1909 and may now be outdated and unduly restrictive due to advances in technology, a public utility cannot condemn a strip of land wider than 100 feet per transmission line, irrespective of the size of the line. This Court is limited to interpreting statutes and may not legislate. *See generally Marchiondo v. Roper,* 90 N.M. 367, 563 P.2d 1160 (1977).

The order entered by the District Court of Luna County permitting plaintiffs to condemn two 100 foot easements parallel

and adjacent to each other is reversed. The cause is remanded to the district court with directions to limit the taking by EPEC to a strip with a maximum width of 100 feet.

IT IS SO ORDERED.

McMANUS, Senior Justice, and PAYNE, J., concur.