870 P.2d 129

**ANADARKO PETROLEUM CORPORATION, Plaintiff–Appellant,**

v.

**Jim BACA, Commissioner of Public Lands, State of New Mexico, Defendant–Appellee.**

**No. 21111.**

Supreme Court of New Mexico.

Feb. 22, 1994.

Hinkle, Cox, Eaton, Coffield & Hensley, Richard E. Olson, Charles A. Sutton, Roswell, for appellant.

Dahl L. Harris, Sp. Asst. Atty. Gen., Santa Fe, for appellee.

*OPINION*

FRANCHINI, Justice.

Anadarko Petroleum Corporation (Anadarko) appeals the dismissal of its claim for refund against the Commissioner of Public Lands of the State of New Mexico (Commissioner) for failure to state a claim upon which

relief can be granted pursuant to SCRA 1986, 1–012(B)(6). We affirm.

Anadarko is the operator of the Langley–Mattix Penrose Sand Unit (the Unit). The State of New Mexico is the lessor and owner of a royalty interest in a number of tracts committed to the Unit. The State took its royalty interest in kind from January 1, 1978 through January of 1981. In 1979, Anadarko's predecessor in interest, Anadarko Production Company, filed suit in the United States District Court for the District of Kansas. *Fletcher v. United States Dep't of Energy (In re the Dep't of Energy Stripper Well Exemption Litig.)*, 763 F.Supp. 498 (D.Kan. 1979) (hereinafter *Stripper Well Litigation* ). This case was consolidated with other similar litigation. *See In re Department of Energy Stripper Well Exemption Litigation*, 472 F.Supp. 1282 (J.P.M.L.1979). The purpose of the Stripper Well Litigation was to seek a declaration that the injection wells in the unit were stripper wells and therefore Anadarko and other interest owners were entitled to preferential stripper well prices.[1] The federal district court permitted the oil producers to sell oil at the stripper well prices. Nevertheless, the court required the oil producers to deposit into an escrow fund the difference between the prices received on the open market and the regulated price. Ultimately, it was determined that the stripper well price was inappropriate and this decision was affirmed on appeal. *Energy Reserves Group, Inc. v. Department of Energy (In re Department of Energy Stripper Well Litigation)*, 690 F.2d 1375 (Temp.Emer.Ct.App.1982), *cert. denied sub nom., Energy Reserves Group, Inc. v. Hodel*, 459 U.S. 1127, 103 S.Ct. 763, 74 L.Ed.2d 978 (1983). Thereafter, an audit of the escrow fund was conducted by the Department of Energy (DOE) and a shortfall was found. By reason of the operator's liability doctrine, a doctrine advanced by the DOE and set out in *Sauder v. Depart-*

*ment of Energy*, 648 F.2d 1341, 1347–48 (Temp.Emer.Ct.App.1981), Anadarko was required to pay the full amount of the escrow shortfall, including the Commissioner's portion. On December 21, 1990 Anadarko filed a cross-claim against the State of New Mexico. The claim was ultimately dismissed on Eleventh Amendment grounds and affirmed on appeal. *Fletcher v. United States Dep't of Energy (In re Dep't of Energy Stripper Well Litig.)*, 763 F.Supp. 498 (D.Kan.1991), *aff'd sub nom. Anadarko Prod. Co. v. New Mexico (In re Dep't of Energy Stripper Well Litig.)*, 956 F.2d 282 (Temp.Emer.Ct.App.1992).

A stipulated agreement between Anadarko and the DOE was entered into resolving the dispute and determining liability between the parties. The Commissioner was not a party to the stipulated agreement although Anadarko requested that the Commissioner participate in settlement negotiations. Anadarko paid over seven million dollars into the escrow fund. Of this amount, Anadarko claims that $866,658 was attributable to the principal and interest owing on the royalty oil sold by New Mexico, the proceeds for which had been paid directly to the State but which the State had not paid into the escrow account.

Thereafter, Anadarko filed a statutory claim for refund pursuant to NMSA 1978, Sections 19–7–59 to –63 (Repl.Pamp.1985 & Cum.Supp.1993) (the Act) for the $866,658 allegedly paid into the escrow fund on behalf of New Mexico. The Commissioner disproved the application and pursuant to Section 19–7–61 filed the application for refund in the district court of Santa Fe County. Anadarko filed a statement of additional facts as set out by Section 19–7–61. A motion to dismiss was filed by the Commission and granted by the district court.

---

**1.** A "stripper well" indicates a class of wells that average fewer than ten barrels of oil per day in production. *See In re Dep't of Energy Stripper Well Exemption Litig.*, 472 F.Supp. at 1284. "An injection well is a well through which water, natural gas or other material is injected into the ground, thereby creating pressure in the geological formation that forces crude oil out from another well." *Id.* at n. 1. In 1974, the Federal

Energy Administration (a predecessor to the Department of Energy) issued Ruling 1974–29, 39 Fed.Reg. 44,414 (1974) which held that injection wells were not stripper wells for purposes of qualifying for the stripper well exemption from price controls. *Id.* at 1284. It is that ruling that Anadarko and other oil companies were challenging.

## I.

■ Anadarko contends that the trial court erred in concluding that Anadarko failed to plead a legally sufficient claim for refund. For purposes of a motion to dismiss for failure to state a claim, we assume the truth of the facts alleged in the complaint. *Castillo v. County of Santa Fe*, 107 N.M. 204, 205, 755 P.2d 48, 49 (1988). A motion to dismiss should only be granted if it appears that plaintiff cannot recover or be entitled to relief under any state of facts provable under the complaint. *Id.* at 206, 755 P.2d at 50.

Anadarko's claim for refund was made pursuant to Sections 19–7–59 to –63. The statutory requirements necessary to state a cause of action for refund under the Act are proof that "[a]ny money erroneously paid on account of any lease or sale of state lands, which money is not carried in any suspense fund but has been distributed to the proper income or permanent fund, shall be repaid in the manner prescribed in this section." Section 19–7–59(A) (Cum.Supp.1993). Subsections B, C and D further delineate the manner for repayment of a valid claim. Because Anadarko seeks a refund of $866,658, Subsection D governs the manner of refund and "money erroneously paid shall be refunded pursuant to the provisions of Sections 19–7–60 through 19–7–63." Section 19–7–59(D).

Section 19–7–60 (Repl.Pamp.1985) specifies that "[a]ny person claiming a refund under the provisions of this act ... shall file with the commissioner of public lands a claim for refund, stating therein the amount claimed to have been erroneously paid, the fund or funds to which such payment was credited and the reasons why such payment was erroneously made." Section 19–7–62 (Repl. Pamp.1985) provides for payment of refunds from the state lands maintenance fund, and Section 19–7–63 (Repl.Pamp.1985) states that refunds shall be made "only out of that part of the state lands maintenance fund distributable to that beneficiary into whose permanent fund the erroneous distribution was made."

■ Anadarko argues that the allegations of its claim fall within the requirements of the Act. In addition, Anadarko contends that it meets the object of the Act as stated in *Staplin v. Vesely*, 41 N.M. 543, 544–45, 72 P.2d 7, 7 (1937) which is "to authorize the return to the owner of moneys erroneously paid to the Commissioner of Public Lands in the transaction of business when it is covered into his funds in the State Treasury." As grounds for its erroneous payment, Anadarko alleges that the amount claimed arose from Anadarko's payment of an obligation imposed upon it by the federal district court in the Stripper Well Litigation because of the operator's liability doctrine and that the amount claimed in refund was erroneously paid on account of state leases.

"Statutory language should be interpreted literally." *State ex rel. Stratton v. Serna*, 109 N.M. 1, 3, 780 P.2d 1148, 1150 (1989). "Where there is no ambiguity, there is no room for alternative interpretation." *Id.* When statutory language is clear and unambiguous, "we must give effect to that language and refrain from further statutory interpretation." *State v. Jonathan M.*, 109 N.M. 789, 790, 791 P.2d 64, 65 (1990). Statutes authorizing suits against the state are strictly construed. *See Board of Directors of the N.M. Insane Asylum v. Runkel (In re Bogert's Will)*, 64 N.M. 438, 443, 329 P.2d 1023, 1026 (1958). With these guidelines in mind we hold that Anadarko's allegations lie beyond the scope of the Act because both the plain statutory language and object of the Act require overpayment to the Commissioner, overpayment of amounts due under particular state leases, and payment in error.

Anadarko argues that although it had not actually paid dollars to the Commissioner, it has a valid claim for refund because a payment attributed to the Commissioner's benefit meets the requirements of the Act. We believe the Act is clear in requiring that an overpayment must be erroneously made to the Commissioner or to funds administered by the Commissioner. In addition, the plain meaning of "refunds" from a governmental entity is that "[m]oney received by the government or its officers which, for any cause, are to be refunded or restored to the parties paying them." *Black's Law Dictionary*, 1282 (6th ed. 1990). Here, as the Commissioner did not receive the money which Anadarko

alleges is paid to the federal court escrow fund, he cannot properly refund the same to Anadarko.

Anadarko argues that it satisfies the Act's requirement of showing overpayment of amounts due on account of particular state leases by alleging a specific amount of overpayment made to discharge an obligation attributed to the state, so long as the leases are specifically named. The procedural mechanisms for refund do not permit the Commissioner to make refunds when he has not received overpayment for certain amounts due under particular state leases.

The Act sets out in several provisions that an amount erroneously overpaid on account of a particular state lease can be refunded only from the fund to which it was properly credited or distributed. Section 19–7–59(A) provides that "[a]ny money erroneously paid on account of any lease or sale of state lands, which ... has been distributed to the proper income or permanent fund, shall be repaid in the manner prescribed in this section." Section 19–7–60 sets out the procedure for claiming a refund and requires the claimant to state the amount claimed, the fund or funds to which payment was credited, and why the payment was erroneously made.

Other provisions delineate how a valid claim is to be repaid, including deductions from subsequent royalty payments. Section 19–7–59(B), paying out of funds distributable to the fund that received the erroneous payment, Section 19–7–62, and paying "only out of that part of the state lands maintenance fund distributable to that beneficiary into whose permanent fund the erroneous distribution was made[,]" Section 19–7–63.

Rather than alleging overpayment of a specific amount of money due for any particular named lease, Anadarko brings a general claim against the State for reimbursement. This general allegation of overpayment does not satisfy the statutory requirements because the Act only permits a refund from that part of the state lands maintenance fund that is distributable to the fund receiving the erroneous payment, *see* Section 19–7–62, or, in the case of erroneous payment to the permanent fund, from that part of the state lands maintenance fund distributable to the

beneficiary whose permanent fund received the erroneous payment. *See* Section 19–7–63. Anadarko alleged that its overpayment was not carried in any suspense fund but was distributed to the proper income fund, the identity of which was unknown. Anadarko has not met the statutory requirement because its overpayment, as alleged, was not made to the Commissioner, and therefore, there was no money for the Commissioner to distribute to an income or permanent fund and no basis for properly making a refund under the Act. *See* Sections 19–7–59(A), –60, –62 & –63.

Anadarko all but concedes that its claim does not fit within the technical aspects of the statutory procedure for refunds, but it argues that its claim should be treated like one because its claim falls within the spirit or reason of the statute. We disagree. The Act requires money to be "erroneously paid" to the Commissioner. *See Staplin*, 41 N.M. at 544–45, 72 P.2d at 7–8. Section 19–7–59(A) provides for repayment of "money erroneously paid on account of any lease or sale of state lands." To authorize a refund under this provision, there must be an error of fact alleged and proved. *Staplin*, 41 N.M. at 545, 72 P.2d at 8. An error of fact is " 'that error which proceeds either from ignorance of that which really exists, or from a mistaken belief in the existence of that which has none.' " *Id.* at 545–46, 72 P.2d at 8–9 (quoting *Delogny v. Her Creditors*, 19 So. 614, 614 (La.1896) (other citations omitted).

Here, Anadarko fails to allege facts establishing ignorance or mistaken belief relating to payment of amounts due under any lease or state income or permanent funds. Anadarko demonstrates both knowledge of the circumstances about which it complains, and control, as unit operator, of the pricing and allocation of oil from the Langley–Mattix Penrose Sand Unit during the relevant time. Money paid under the circumstances of this case cannot be refunded because Anadarko's court-ordered payment of money into the escrow fund did not constitute an erroneous payment of money to the Commissioner, as required by the Act and our case law. *See id.*

We fully agree with the district court that:

"Anadarko may well have a legitimate claim against the State of New Mexico by reason of its payments into an escrow account for royalties on oil taken by the State in-kind, pursuant to the Unit Agreement. But whatever that claim is, it is not a claim for refund of payments erroneously made to the Commissioner viable under [the Act]."

We cannot allow a statutory claim for refund where it neither fits within the provisions of the Act nor meets its object. In view of the foregoing, we affirm the order of the trial court dismissing Anadarko's claim for refund.

IT IS SO ORDERED.

BACA and MONTGOMERY, JJ., concur.