# IN THE SUPREME COURT OF THE STATE OF NEW MEXICO

**Opinion Number: 2009-NMSC-013**

**Filing Date: March 11, 2009**

**Docket No. 30,710**

**MARBOB ENERGY CORPORATION,**
a corporation,

       **Petitioner-Petitioner,**

**v.**

**THE NEW MEXICO OIL CONSERVATION COMMISSION,**

       **Respondent-Respondent.**

**ORIGINAL PROCEEDING ON CERTIORARI**
**Daniel A. Sanchez, District Judge**

Holland & Hart, L.L.P.
William F. Carr
Larry J. Montaño
Ocean Munds-Dry
Kristina Elena Martinez
Santa Fe, NM

for Petitioner

Gary K. King, Attorney General
David K. Brooks, Special Assistant Attorney General
Santa Fe, NM

for Respondent

Belin & Sugarman
Alletta D. Belin
Santa Fe, NM

for Amicus Curiae
New Mexico Citizens for Clean Air & Water, Inc.

1

**OPINION**

**CHÁVEZ, Chief Justice.**

**{1}** The Oil Conservation Commission (the Commission) promulgated New Mexico Administrative Code regulation 19.15.14.1227 NMAC (12/1/08) (Rule 1227),[1] giving itself and the Oil Conservation Division (the Division) the authority to assess civil penalties and impose other sanctions against any person who violates the Oil and Gas Act (the Act), NMSA 1978, Sections 70-2-1 to -38 (1935, as amended through 2004), or any rule, order, or regulation issued thereunder. Petitioner Marbob Energy Corporation (Marbob) appealed the Commission's order to the district court, arguing that the Commission exceeded its statutory authority when it implemented Rule 1227. The district court upheld the Commission's order, holding that the Legislature's broad grants of authority and jurisdiction to the Commission and the Division include the authority to assess the civil penalties authorized by the Act. We reverse and hold that the specific provisions of Section 70-2-28 require the Attorney General to bring an action in court to assess civil penalties for violations of the Act and rules, orders, and regulations issued thereunder.

**I.     BACKGROUND**

**{2}** The Commission was created by Section 70-2-4 of the Act and has two primary duties regarding the conservation of oil and gas: prevention of waste and protection of correlative rights. Section 70-2-11(A); *Santa Fe Exploration Co. v. Oil Conservation Comm'n of N.M.*, 114 N.M. 103, 112, 835 P.2d 819, 828 (1992). The Commission may also make rules and regulations to implement and enforce the Act. *See* § 70-2-11(A) (granting the Division the authority to make and enforce rules, regulations, and orders); § 70-2-11(B) (granting the Commission concurrent jurisdiction with the Division "to the extent necessary for the [C]ommission to perform its duties as required by law"). Marbob is an oil and gas producer subject to the authority of both the Commission and the Division.

**{3}** In September 2005, the Division filed an application for rule adoption and amendment with the Commission, requesting that the Commission adopt or amend certain provisions of the New Mexico Administrative Code pertaining to the regulation of oil and gas. Among the requested changes, the Division asked the Commission to adopt Rule 1227,

---

[1]Rule 1227 was originally codified at 19.15.14.1227 NMAC. Apparently either the New Mexico Energy, Minerals and Natural Resources Department, the Commission, or the Division repealed that section of the Administrative Code and replaced it with 19.15.5.10 NMAC, although we could not find any record of the agency or the Commission making this change effective. Section 19.15.5.10 NMAC is identical in all material respects to former Rule 1227. For the sake of consistency on appeal, we refer to the disputed section of 19.15.5.10 as Rule 1227, recognizing that our holding affects the validity of 19.15.5.10(B)(2).

2

thereby establishing administrative "compliance proceedings." "A compliance proceeding is an adjudicatory proceeding in which the [D]ivision seeks an order imposing sanctions for violation of a provision of the Oil and Gas Act, or a provision of a rule or order issued pursuant to the [A]ct." 19.15.5.10(B) NMAC (citation omitted). Among the several sanctions available in Rule 1227, the Division and the Commission may assess civil penalties pursuant to Section 70-2-31(A) of the Act.[2] 19.15.5.10(B)(2) NMAC. The Commission granted the Division's application with its Order No. R-12452 on November 10, 2005, implementing Rule 1227 upon its publication in the New Mexico Register.

**{4}** Marbob timely filed an application for rehearing with the Commission under the Act. The Commission took no action on Marbob's application, automatically making Order No. R-12452 final ten days after Marbob's filing. *See* § 70-2-25(A). Marbob appealed the Commission's decision to the district court on several grounds, and the district court upheld the Commission's decision. Marbob petitioned the Court of Appeals for a writ of certiorari to the district court, which was denied. Marbob then petitioned this Court for a writ of certiorari, which we granted to determine whether the Division or the Commission has the statutory authority to assess civil penalties. *Marbob Energy Corp. v. N.M. Oil Conservation Comm'n*, 2007-NMCERT-011, 143 N.M. 156, 173 P.3d 763.

## II. DISCUSSION

### A. STANDARD OF REVIEW

**{5}** We are asked to determine whether Rule 1227 granted the Division and the Commission authority not provided by the Act. It is well settled that "[a]n agency may not create a regulation that exceeds its statutory authority." *Gonzales v. N.M. Educ. Ret. Bd.*, 109 N.M. 592, 595, 788 P.2d 348, 351 (1990) (citation omitted). To determine whether Rule 1227 complies with the Act, we must look to the Act to determine whether the Legislature granted the Division or the Commission the authority to impose civil penalties. As a result, our analysis is one of statutory construction, and we review the district court's decision upholding Rule 1227 de novo. *See N.M. Indus. Energy Consumers v. N.M. Pub. Regulation Comm'n*, 2007-NMSC-053, ¶ 19, 142 N.M. 533, 168 P.3d 105 ("Statutory interpretation is . . . review[ed] de novo.").

**{6}** In construing the Act, the Commission encourages us to defer to its interpretation of the Act's provisions that it contends authorize the Division to assess civil penalties. We decline to afford the Commission such deference. When an agency construes a statute that governs it, the court will accord some deference to the agency's interpretation. *Morningstar Water Users Ass'n v. N.M. Pub. Util. Comm'n*, 120 N.M. 579, 583, 904 P.2d 28, 32 (1995).

---

[2]The parties agree that Rule 1227 empowers both the Commission and the Division to assess civil penalties. Thus, our holding is applicable to both the Commission's and the Division's authority in this regard.

In addition, the court will confer a heightened degree of deference to the agency on legal questions that determine fundamental policies within the scope of the agency's statutory function. *Id.* These two principles suggest that we should defer to the Commission's construction of the Act because the Commission is construing its governing statute and the legal question before us is whether the Commission or the Division may achieve its statutory function of conserving oil and gas by enforcing the Act through the assessment of civil penalties. However, these principles are not the only guideposts we observe in determining whether an agency's interpretation of its governing statute should be accorded deference.

{7}     Statutory construction is a question of law. *State v. Romero*, 2006-NMSC-039, ¶ 6, 140 N.M. 299, 142 P.3d 887. As such, "the court is not bound by the agency's interpretation [of its own statute] and may substitute its own independent judgment for that of the agency because it is the function of the courts to interpret the law." *Morningstar*, 120 N.M. at 583, 904 P.2d at 32. Moreover, we are less likely to defer to an agency's interpretation of the relevant statute if the statute is clear and unambiguous, as it is in this case. *See Doña Ana Mut. Domestic Water Consumers Ass'n v. N.M. Pub. Regulation Comm'n*, 2006-NMSC-032, ¶ 10, 140 N.M. 6, 139 P.3d 166. Also, if statutory construction is not within the agency's expertise, this Court should afford little, if any, deference to the agency on issues of statutory construction. *N.M. Indus. Energy Consumers*, 2007-NMSC-053, ¶ 19, 142 N.M. 533, 168 P.3d 105. The Commission's specialized expertise pertains to the regulation and conservation of oil and gas. *See* § 70-2-4 (stating that the commissioners "shall be persons who have expertise in the regulation of petroleum production by virtue of education or training."). Nothing in the Act requires the Commissioners to be trained in matters of statutory interpretation. Thus, we conclude that statutory construction is not within the Commission's specialized expertise. *Cf. N.M. Indus. Energy Consumers*, 2007-NMSC-053, ¶ 19, 142 N.M. 533, 168 P.3d 105 (holding that statutory construction is not a matter within the Public Regulation Commission's expertise). For these reasons, whether the Legislature intended to bestow upon the Commission or the Division the authority to assess civil penalties as part of the Act's overall compliance regime is a question of law, and we accord the Commission little deference on this matter.

**B.      SECTION 70-2-28 REQUIRES THAT THE ATTORNEY GENERAL BRING AN ACTION TO ESTABLISH LIABILITY AND ASSESS PENALTIES FOR VIOLATIONS OF THE ACT OR RELATED RULES OR ORDERS**

{8}     The parties' dispute essentially amounts to conflicting interpretations of Sections 70-2-28 and -31 of the Act. Marbob argues that Section 70-2-28 mandates that the Attorney General bring suit to assess the penalties authorized by Section 70-2-31 for violations of the Act or related rules or orders. The Commission argues that Sections 70-2-28 and -31 are silent about who may assess penalties and that the Division and the Commission may therefore assess penalties by virtue of the broad statutory authority granted to them in Sections 70-2-6 and -11 to enforce the Act. The Commission further specifically contends that regarding civil penalties, the Attorney General's role is limited in Section 70-2-31 to

4

collecting the penalties previously assessed by the Division. We agree with Marbob that it is the role of the Attorney General to establish liability and assess the civil penalties authorized under the Act.

**{9}**     In construing a statute, our charge is to determine and give effect to the Legislature's intent. *N.M. Indus. Energy Consumers*, 2007-NMSC-053, ¶ 20, 142 N.M. 533, 168 P.3d 105. In discerning the Legislature's intent, we are aided by classic canons of statutory construction, and "[w]e look first to the plain language of the statute, giving the words their ordinary meaning, unless the Legislature indicates a different one was intended." *Id.* "When statutory language is clear and unambiguous, [this Court] must give effect to that language and refrain from further statutory interpretation." *Anadarko Petroleum Corp. v. Baca*, 117 N.M. 167, 169, 870 P.2d 129, 131 (1994) (internal quotation marks and citation omitted). Only if an ambiguity exists will we proceed further in our statutory construction analysis. *See State v. Maestas*, 2007-NMSC-001, ¶ 14, 140 N.M. 836, 149 P.3d 933 (filed 2006) ("Unless ambiguity exists, this Court must adhere to the plain meaning of the language."). Therefore, we begin our analysis with the plain language of the Act's relevant provisions to determine whether their ordinary meaning results in an ambiguity.

**{10}**     The plain language of Section 70-2-28 requires the Attorney General to bring an action for penalties when those penalties are applicable. It states, in pertinent part:

> Whenever it shall appear that any person is violating, or threatening to violate, any statute of this state with respect to the conservation of oil or gas, or both, or any provision of this act, or any rule, regulation or order made thereunder, the division *through the [A]ttorney [G]eneral shall bring suit* against such person in the county of the residence of the defendant, or in the county of the residence of any defendant if there be more than one defendant, or in the county where the violation is alleged to have occurred, *for penalties, if any are applicable*, and to restrain such person from continuing such violation or from carrying out the threat of violation.

*Id.* (emphasis added). An ordinary reading of this section affirmatively requires that the Attorney General bring suit on the Division's behalf to impose penalties when those penalties are applicable. However, Section 70-2-28 does not state *when* penalties are applicable. We must look elsewhere in the Act to make that determination.

**{11}**     Sections 70-2-22, -31, and -36 of the Act authorize penalties. Of these sections, the only penalty provision that directly concerns us in this case is Section 70-2-31(A), which provides that "[a]ny person who knowingly and willfully violates any provision of the Oil and Gas Act . . . or any provision of any rule or order issued pursuant to that act shall be subject to a civil penalty of not more than one thousand dollars ($1,000) for each violation." However, we must read all three of these penalty provisions together with Section 70-2-28 to determine how the Legislature envisioned that these penalties be assessed. *See High Ridge Hinkle Joint Venture v. City of Albuquerque*, 1998-NMSC-050, ¶ 5, 126 N.M. 413,

970 P.2d 599 ("[W]here several sections of a statute are involved, they must be read together so that all parts are given effect.").

**{12}** Reading these provisions together, we conclude that the "for penalties, if any are applicable" language in Section 70-2-28 refers to the various penalties authorized by the Act, which may be applicable as a tool to enforce the Act in response to a particular violation. For example, Section 70-2-22(B) states that "[p]enalties shall be imposed" for each transaction involving illegal gas or oil products when the person committing that transaction "knows that illegal oil or illegal oil product, or illegal gas or illegal gas product, is involved in such transaction." Similarly, Section 70-2-31 authorizes civil penalties for knowing and willful violations of the Act or related rules or orders. Finally, Section 70-2-36 makes it a misdemeanor to alter or remove any identification mark of any kind from any tool, construction item, or oil field equipment with the intent to deprive its lawful owner of positive identification. Reading these four sections together, we conclude that the Legislature intended to require the Attorney General to bring an action to impose the penalties authorized by the Act's various sections, including the civil penalties authorized by Section 70-2-31. Such an action would determine whether a person is liable for an alleged violation and, if so, the amount of penalties to be imposed.

**{13}** The Commission offers several arguments to support its position that the Legislature intended the Division or the Commission to assess civil penalties for violations of the Act, or related rules or orders, and the Attorney General to only collect them. The Commission first argues that Sections 70-2-6 and -11, when read together, expressly grant the Division and the Commission the authority to impose civil penalties. Section 70-2-6(A) grants the Division "jurisdiction and authority over all matters relating to the conservation of oil and gas." It further gives the Division "jurisdiction, authority and control of and over all persons, matters or things necessary or proper to enforce effectively the provisions of this act." *Id.* Section 70-2-11(A) empowers the Division to prevent waste and protect correlative rights and "to make and enforce rules, regulations and orders, and to do whatever may be reasonably necessary to carry out the purpose of this act, whether or not indicated or specified in any section hereof." The Commission is granted "concurrent jurisdiction and authority with the [D]ivision to the extent necessary for the [C]ommission to perform its duties as required by law." Sections 70-2-6(B), -11(B). The Commission argues that the broad jurisdiction and authority given the Division in these sections to do whatever is reasonably necessary to enforce the Act "is a clear and explicit delegation of jurisdiction of penalty assessment cases." We disagree.

**{14}** The Commission's reading of Sections 70-2-6 and -11 ignores the specific requirement in Section 70-2-28 that the Attorney General bring suit "for penalties, if any are applicable." Indeed, without more, the Commission's construction of Sections 70-2-6 and -11 creates a contradiction in the statute. If the Commission's interpretation is correct, then the Legislature would have granted the Division jurisdiction to assess civil penalties in Section 70-2-11 while simultaneously requiring the Attorney General to bring suit in district court to accomplish the same thing. The Legislature cannot have intended both. We resolve

6

this ambiguity by giving effect to Section 70-2-28, which is the more specific statutory provision.

**{15}** "As a general rule of statutory construction, . . . general language in a statute is limited by specific language." *Lubbock Steel & Supply, Inc. v. Gomez*, 105 N.M. 516, 518, 734 P.2d 756, 758 (1987). Section 70-2-28 specifically requires the Attorney General to "bring suit . . . for penalties, if any are applicable." In contrast, Section 70-2-11 empowers the Commission and the Division to do "whatever may be reasonably necessary" to enforce the Act. The Attorney General's specific obligation under Section 70-2-28 to bring suit in district court for penalties, when applicable, governs over the general grants of authority and jurisdiction to the Division and the Commission in Sections 70-2-6 and -11. Therefore, Sections 70-2-6 and -11 do not grant the Division and the Commission express authority to assess civil penalties.

**{16}** The Commission's next argument encourages us to construe a suit to "recover" penalties as a suit to "collect" them. In this way, the Commission argues, when the Legislature authorized civil penalties that "*shall be recoverable* by a civil suit filed by the [A]ttorney [G]eneral in the name and on behalf of the [C]ommission or the [D]ivision in the district court," Section 70-2-31(A) (emphasis added), it only intended the Attorney General to bring a suit to collect the penalties that the Division had already assessed pursuant to its broad enforcement authority in Sections 70-2-6 and -11. The Commission relies on a definition of "recover" to mean only "collect." In light of the Act's other, related provisions, we do not believe the Legislature intended that term to be given such a restrictive meaning.

**{17}** *Black's Law Dictionary* defines "recover" broadly, meaning "[t]o obtain by a judgment or other legal process." *Id.* at 1302 (8th ed. 2004). We recognize, however, that an action to recover could also be an action to collect what has previously been determined to be due, such as an action to recover a judgment previously entered. *See Black's Law Dictionary* 1440 (4th ed. 1968) (defining "recover" as "[t]o get or obtain again, to collect"). Thus, the meaning of the term is ambiguous, and we will look to the Act's related provisions to determine what the Legislature intended. *See Gen. Motors Acceptance Corp. v. Anaya*, 103 N.M. 72, 76, 703 P.2d 169, 173 (1985) ("[This Court] read[s] the act in its entirety and construe[s] each part in connection with every other part in order to produce a harmonious whole.") (citation omitted)).

**{18}** Giving the term "recoverable" in Section 70-2-31 the more limited meaning of an action solely to collect penalties already assessed would create an inconsistency between Sections 70-2-28 and -31. Section 70-2-28 requires the Attorney General to bring an action to impose liability and assess penalties when they may be applicable. Following the Commission's definition of "recover," Section 70-2-31 would attempt to limit that authority to collections actions. We are disinclined to construe a statute to create conflicts between its provisions rather than resolve them. *See El Paso Elec. Co. v. Real Estate Mart, Inc.*, 92 N.M. 581, 584, 592 P.2d 181, 184 (1979) ("It is the duty of the court, so far as practicable, to reconcile different provisions so as to make them consistent, harmonious, and sensible.")

7

Therefore, we reject the Commission's argument that Section 70-2-31 limits the Attorney General's authority with respect to civil penalties to actions to collect penalties previously assessed by the Division or the Commission.

**{19}**     In support of its construction of the Act, the Commission next argues that Section 70-2-28, which requires the Attorney General to bring suit in district court, is solely an injunction provision and its "penalties" language applies only when the Commission or the Division has not previously assessed civil penalties for a violation of the Act, "as this [structure] would obviate the necessity for a separate proceeding before the Commission." The Commission argues that a provision authorizing the Attorney General to seek the judicial remedy of an injunction is necessary because the Commission does not have contempt powers.  Thus, according to the Commission, the Attorney General could bring an action to impose liability and assess penalties when it was seeking an injunction and the Division had not already assessed penalties for the same violation; otherwise, penalty assessment authority is reserved exclusively to the Division and the Commission.  We are not persuaded by this argument.

**{20}**     In support of this contention, the Commission relies on language in the first sentence of Section 70-2-28 to claim that the Legislature intended to limit the Attorney General's authority to bring actions only for present or future violations.  *See id.* ("Whenever it shall appear that any person *is violating, or threatening to violate*, any statute of this state with respect to the conservation of oil or gas, . . . the [D]ivision through the [A]ttorney [G]eneral shall bring suit against such person . . . for penalties, if any are applicable, and to restrain such person from continuing such violation or from carrying out the threat of violation.") (emphasis added)).  Although the Commission contends that this language renders Section 70-2-28 solely an injunction provision, its construction of Section 70-2-28 gives the Attorney General authority to assess penalties in certain situations as well.  In spite of its argument that Section 70-2-28 is an injunction provision, the Commission's construction would allow the Attorney General to seek assessment of penalties when two conditions are met:  first, when the Attorney General is seeking an injunction; and second, when the Division or the Commission has not previously assessed penalties for the same violation. The Commission's interpretation of Section 70-2-28 would have us read into the statute language that is not there, which we will not do if the provision makes sense as written.  *See High Ridge Hinkle Joint Venture*, 1998-NMSC-050, ¶ 5, 126 N.M. 413, 970 P.2d 599.  There is no indication anywhere in the Act that the Legislature intended this conditional, if-then approach to penalty assessment, and the plain language of Section 70-2-28 does not impose such a scheme.  Accordingly, we will not read this language into the Act.

**{21}**     Furthermore, the Commission's argument requires that we construe the language in Section 70-2-28 that "the [A]ttorney [G]eneral shall bring suit . . . for penalties, if any are applicable" to mean that civil penalties are only "applicable" (in the sense that the Attorney General may assess them) when the Division has not previously assessed them *and* when the Attorney General is simultaneously seeking injunctive relief for the same violation of the Act or related rules or orders.  The Commission's construction of the Act would give itself the

8

first chance to adjudicate civil liability and assess penalties. In light of the Act's other penalty provisions, *see, e.g.*, Sections 70-2-22, -36, and the language of Section 70-2-28 requiring the Attorney General to bring suit for penalties, when applicable, the Commission's interpretation cannot be what the Legislature intended. The Legislature's use of the word "applicable" in Section 70-2-28 is a reference to the other statutory penalty provisions, which would be applicable depending on the type and nature of the alleged violation. Rather than construing the word "applicable" to mean "when the Division has not previously assessed civil penalties," we conclude that Section 70-2-28 makes sense as written and requires the Attorney General to bring suit in court to establish liability and to assess whatever penalties are authorized by the Act. Therefore, we reject this argument as well.

**{22}** Finally, the Commission argues that the Legislature's use of the phrase "the [A]ttorney [G]eneral shall bring suit" in Section 70-2-28 is only meant to emphasize the Commission's duty to enforce the Act and should be read in conjunction with the Act's next section, which grants private citizens the right to enforce the Act when the Commission and the Division do not. *See* § 70-2-29 ("Actions for damages; institution of actions for injunctions by private parties."). We disagree. It is widely accepted that when construing statutes, "shall" indicates that the provision is mandatory, and we must assume that the Legislature intended the provision to be mandatory absent an clear indication to the contrary. *See State v. Lujan*, 90 N.M. 103, 105, 560 P.2d 167, 169 (1977). The plain reading of Section 70-2-28 requires, among other things, that the Attorney General bring suit for penalties when those penalties are applicable. To read the phrase "the [A]ttorney [G]eneral shall bring suit" in Section 70-2-28 to mean that the Commission or the Division have the responsibility and the authority to enforce the Act and related rules and orders violates the plain meaning rule. We believe that the Legislature's directive that the Attorney General shall bring suit should be read to require the Attorney General to bring an action, not as a reminder that the Commission should enforce the Act. *See Anadarko Petroleum Corp.*, 117 N.M. at 169, 870 P.2d at 131 ("Statutory language should be interpreted literally.") (internal quotation marks and citation omitted)). *Cf. Cerrillos Gravel Prods., Inc. v. Bd. of County Comm'rs of Santa Fe County*, 2005-NMSC-023, ¶ 21, 138 N.M. 126, 117 P.3d 932 (holding that county had implied statutory authority to suspend a mining permit because of zoning violations and was not limited to seeking statutory penalties through the district attorney in court). Therefore, we reject this final argument of the Commission as well.

## III.    CONCLUSION

**{23}** While not unsympathetic to the Commission's professed need for greater enforcement authority, we defer, as we must, to the Legislature for the grant of that authority, and so too must the Commission. The Commission's enabling statutes are undeniably dated, and perhaps inadequate to face the contemporary challenges the Commission appears to claim. However, any enhancements to the Commission's authority must come from the same legislative body that created the Commission in the first instance.

**{24}** For the reasons stated above, we hold that Section 70-2-28 requires the Attorney General to bring suit on behalf of the Division in court to impose civil penalties authorized by Section 70-2-31. We therefore reverse the district court and invalidate Section 19.15.5.10(B)(2) NMAC pertaining to the Commission's and the Division's authority to impose penalties.

**{25}** **IT IS SO ORDERED.**

 

**EDWARD L. CHÁVEZ, Chief Justice**

 

**WE CONCUR:**

**PATRICIO M. SERNA, Justice**

**PETRA JIMENEZ MAES, Justice**

**RICHARD C. BOSSON, Justice**

**CHARLES W. DANIELS, Justice**

 

**Topic Index for *Marbob Energy Corp. v. N.M. Oil Conservation Commission*, No. 30,710**

**AL**        **ADMINISTRATIVE LAW AND PROCEDURE**

AL-AA      Administrative Appeal
AL-LI       Legislative Intent
AL-RU     Rules
AL-SR      Standard of Review

**AE**        **APPEAL AND ERROR**

AE-SR      Standard of Review

**GV**        **GOVERNMENT**

GV-AG     Attorney General
GV-SA      State Agencies

**NR**       **NATURAL RESOURCES**

NR-OG       Oil and Gas

**ST**       **STATUTES**

ST-IP       Interpretation
ST-LI       Legislative Intent
ST-RC       Rules of Construction