This decision of the Supreme Court of New Mexico was not selected for publication in the New Mexico Appellate Reports. Refer to Rule 12-405 NMRA for restrictions on the citation of unpublished decisions. Electronic decisions may contain computer-generated errors or other deviations from the official version filed by the Supreme Court.

## IN THE SUPREME COURT OF THE STATE OF NEW MEXICO

**Filing Date: December 16, 2021**

**No. S-1-SC-37458**

**CITY OF LAS CRUCES,**

Appellant,

v.

**NEW MEXICO PUBLIC REGULATION COMMISSION,**

Appellee,

and

**EL PASO ELECTRIC COMPANY, FOUR PEAKS ENERGY, LLC, and ENERGYneering SOLUTIONS, INC.,**

Interveners-Appellees.

**In the Matter of the Application for Approval of El Paso Electric Company's 2018 Renewable Energy Plan Pursuant to the Renewable Energy Act and 17.9.572 NMCA, and Revised Rate No. 38-RPS Cost Rider, New Mexico Public Regulation Commission Case No. 18-00199-UT**

**APPEAL FROM THE NEW MEXICO PUBLIC REGULATION COMMISSION**

Stevens Law LLC
Anastasia S. Stevens
Santa Fe, NM

Jennifer Vega-Brown, City Attorney
Marcia B. Driggers, Assistant City Attorney

Las Cruces, NM

for Appellant

Russell R. Fisk,
Associate General Counsel
Santa Fe, NM

for Appellee

Nancy Brook Burns
Santa Fe, NM

for Intervener-Appellee El Paso Electric Company

Keleher & McLeod, P.A.
Thomas C. Bird
Albuquerque, NM

for Intervenors-Appellees Four Peaks Energy, LLC and
ENERGYneering Solutions, Inc.

## DECISION

**VIGIL, Chief Justice.**

**{1}** Under the Renewable Energy Act (Act), NMSA 1978, §§ 62-16-1 to -10 (2004, as amended through 2021), a public utility must have a certain percentage of its retail sales to electric consumers come from renewable energy. Sections 62-16-3(G) (2007, amended 2019), 62-16-4(A) (2014, amended 2019).[1] This percentage is called a renewable portfolio standard (Portfolio Standard). Section 62-16-3(G) (2007). If a public utility cannot generate enough of its own renewable energy to meet this Portfolio Standard, it can procure renewable energy certificates (Certificates). Each Certificate represents a certain amount of electricity generated from a renewable energy resource—like a currency by which public utilities' compliance with the Portfolio Standard may be measured. Section 62-16-3(F) (2007); § 62-16-5(A) (2007, amended 2019). Costs associated with procuring Certificates are then passed on to electric consumers, or "ratepayers." *See* § 62-16-2(B)(3); 17.9.572.12 NMAC (5/31/2013).

**{2}** Because ratepayers incur the financial burden of procuring Certificates, public utilities cannot be required to procure renewable energy to meet the Portfolio Standard if it is above a reasonable cost threshold (Threshold). *See* § 62-16-2(B)(3) (providing that one purpose of the Act is to protect ratepayers from renewable energy costs above the Threshold); *see also* § 62-16-4(B) (2014) ("If . . . , in any given year, the cost of renewable energy that would need to be procured or generated for purposes of

---

[1]We issue this disposition by decision rather than precedential opinion because the relevant statutes and regulations have since been amended.

compliance with the [Portfolio Standard] would be greater than the [Threshold] . . . , the public utility shall not be required to incur that cost."). As a result, the Threshold serves as "a customer protection mechanism that limits the customer bill impact." 17.9.572.12 NMAC (5/31/2013).

**{3}**     In this case, the City of Las Cruces (City) appeals a final order from the New Mexico Public Regulation Commission (Commission), Case No. 18-00109-UT, which approved the 2018 Annual Renewable Energy Plan (2018 Plan) between El Paso Electric Company (El Paso Electric) and the Camino Real Landfill to Energy Facility (Camino Real). The 2018 Plan allowed El Paso Electric to purchase Certificates generated by Camino Real despite El Paso Electric's costs for complying with the Portfolio Standard being well above the Threshold.[2]

**{4}**     We conclude that the final order approving of the 2018 Plan to exceed the Threshold is in violation of the consumer protection provisions of the Act. *See* § 62-16-2(B)(3); § 62-16-4(B) (2014). We reverse and remand.

## I.     BACKGROUND

**{5}**     Camino Real is a biogas plant that uses methane gas from a landfill to generate renewable energy. Camino Real is also a "qualified facility" as defined by the federal Public Utility Regulatory Policies Act of 1978, 16 U.S.C. §§ 2601-2645 (2006). As a qualifying facility, it may interconnect with a public utility. This creates an obligation for the utility to purchase all of the energy produced by Camino Real at the utility's avoided cost of generation. 17.9.570.9(A) NMAC.

**{6}**     Here, Camino Real and El Paso Electric are interconnected, meaning El Paso Electric must purchase all the energy Camino Real produces at El Paso Electric's avoided cost. Because of this, El Paso Electric was also the owner of any Certificates generated by Camino Real and, as a result, when Camino Real was originally included in El Paso Electric's portfolio, El Paso Electric claimed all Certificates at no cost. Section 62-16-5(B)(1)(a) (2007); *see* 17.9.572.17(C)(1)(b) NMAC (5/31/2013) (providing that if the generator is a qualifying facility, the Certificates are owned by the public utility unless retained by the generator through a specific agreement).

**{7}**     Although El Paso Electric could claim the Certificates at no cost, in 2009, the Commission approved of an agreement that allowed Camino Real to retain its Certificates and then sell them to El Paso Electric, with El Paso Electric voluntarily offering $15 per Certificate through December 31, 2018. This was made possible because at the time of the agreement El Paso Electric's cost of compliance with the Portfolio Standard was below the Threshold. This is no longer the case.

**{8}**     In its 2018 Plan, El Paso Electric requested approval of a ten-year agreement to pay Camino Real $30 per Certificate. The reasons offered by El Paso Electric for the $30 amended Certificate price were to allow Camino Real to continue New Mexico

---

[2]The Threshold in effect for the 2018 Plan was 3% of the plan year total revenues. 17.9.572.12(B) NMAC (5/31/2013). El Paso Electric projected renewable costs of 6.54% in 2018.

operations and to maintain compliance with Portfolio Standard. But because El Paso Electric's costs for compliance of the Portfolio Standard were more than double the Threshold, the Commission could not make El Paso Electric incur the costs associated with purchasing the Certificates. *See* § 62-16-4(B) (2014). Thus, the only real reason for the $30 Certificate price was to ensure the viability of Camino Real.

**{9}** Following a public hearing on the 2018 Plan, a hearing examiner issued a recommended decision. The hearing examiner recommended that the procurement by El Paso Electric of Certificates from Camino Real was "not supported by the law or the evidence and should be denied." Following receipt of the recommendation, the Commission considered the matter in an open meeting. During the meeting, some Commissioners proposed an alternative agreement asking whether El Paso Electric and Camino Real were willing to enter an agreement at a price of $25 per Certificate or some other price lower than $30. The alternative agreement was issued to El Paso Electric that same day in the form of a bench request. El Paso Electric submitted a response to the bench request, stating that it would be "willing to enter into a contract extension at $25 per [Certificate] assuming [Camino Real] confirms that [it] believe[s] the contract will make the project viable going forward."[3] However, in that same response, El Paso Electric relayed the answer from Camino Real's owner that the "project is not amenable to a lower [Certificate] rate as the difference would be directly attributable to the ability to support proper wages for technical operations labor."

**{10}** A few days after receiving El Paso Electric's response, the Commission issued a final order approving of the 2018 Plan with the price of $30 per Certificate, despite El Paso Electric's costs exceeding the Threshold. The Commission concluded that the 2018 Plan should be approved because "[El Paso Electric] states that the owner of [Camino Real] stated that a [Certificate] price of $25 . . . jeopardizes the viability of the project." The City filed a motion for a rehearing which the Commission denied. The City appealed.

## II.     DISCUSSION

**{11}** On appeal, the City makes three arguments: (1) the final order violates the consumer protection provisions of the Act, (2) the final order contradicts Commission precedent interpreting the Act, and (3) the final order violates the legal residuum rule because the Commission relied solely on hearsay evidence. Because we conclude that the final order violates the consumer protection provisions of the Act, we do not address the City's remaining arguments.

## A.     Statutory Construction and Standard of Review

**{12}** We review the Commission's final order to determine whether it is in accordance with law. *N.M. Att'y. Gen. v. N.M. Pub. Regul. Comm'n*, 2013-NMSC-042, ¶ 9, 309 P.3d 89. Our review begins by looking at two interconnected factors: (1) "whether the decision presents a question of law, a question of fact, or some combination of the two";

---

3The "project" is the Camino Real project of converting landfill gas to energy.

and (2) "whether the matter is within the agency's specialized field of expertise." *Alb. Bernalillo Co. Water Util. Auth. v. N.M. Pub. Regul. Comm'n*, 2010-NMSC-013, ¶ 17, 148 N.M. 21, 229 P.3d 494 (internal quotation marks and citation omitted).

**{13}** Whether the final order violates the consumer protection provisions of the Act is a question of statutory interpretation which we review de novo. *State v. Nick R.*, 2009-NMSC-050, ¶ 11, 147 N.M. 182, 218 P.3d 868. As statutory interpretation is not within the Commission's expertise, we afford "little, if any, deference to the [Commission] on issues of statutory interpretation." *Marbob Energy Corp. v. N.M. Oil Conservation Comm'n*, 2009-NMSC-013, ¶ 7, 146 N.M. 24, 206 P.3d 135. Further, we are "less likely to defer to [the Commission's] interpretation of the relevant statute if the statute is clear and unambiguous." *Id.*

**{14}** When looking at a statute, our primary goal "is to ascertain and give effect to the intent of the Legislature." *Nick R.*, 2009-NMSC-050, ¶ 11. We "determine and give effect to the Legislature's intent" by looking "first to the plain language of the statute." *Marbob Energy Corp.*, 2009-NMSC-013, ¶ 9 (internal quotation marks and citation omitted). We strive to view the statute "in its entirety and construe each part in connection with every other part to produce a harmonious whole." *Key v. Chrysler Motors Corp.*, 1996-NMSC-038, ¶ 14, 121 N.M. 764, 918 P.2d 350.

## B.    Analysis

**{15}** The City argues that the final order violates the plain language of the Act by ignoring consumer protection provisions. The City contends that because one of the purposes of the Act is to "protect public utilities and their ratepayers from renewable energy costs that are above" the Threshold, *see* § 62-16-2(B)(3), the Legislature intended for the Threshold to be a customer protection mechanism. The City suggests that this intent is reflected by the language in Section 62-16-4(B) (2014) which states that if the cost of renewable energy needed "for purposes of compliance with the [Portfolio Standard] would be greater than the [Threshold] . . . the public utility shall not be required to incur that cost," but if "a public utility can generate or procure renewable energy at or below the [Threshold], it shall be required to add renewable energy resources." Thus, the City argues that the Legislature intended for utilities to procure renewable resources but only up until the Threshold. Thereafter, a utility would be excused from the Portfolio Standard requirements until it could procure renewable resources and not exceed the Threshold. By concluding otherwise, the Commission violated the rules of statutory construction.

**{16}** In response, El Paso Electric argues that the Threshold is not an absolute cap, it is just the point at which the Commission cannot require utilities to purchase renewable energy. El Paso Electric contends that the City focuses on only one purpose of the Act—to protect ratepayers from costs over the Threshold—and minimizes the other two purposes of the Act: to prescribe the amount of renewable energy a utility shall include in their electric energy portfolios, and to allow utilities to recover costs for procuring renewable energy. El Paso Electric suggests that because nothing specifically prohibits a utility from exceeding the Threshold, it was meant to be flexible to accommodate the

"central purposes" of the Act—promotion of renewable energy while allowing a utility to recover the reasonable costs of procurement.

**{17}** The Act has three purposes: (1) to prescribe the amount of renewable energy resources that public utilities shall include in their Portfolio Standard plans, (2) to allow public utilities to recover costs through the rate-making process, and (3) to protect public utilities and their ratepayers from renewable energy costs above the Threshold. Section 62-16-2(B)(1)-(3). Unless otherwise indicated by the plain language of the statute, it is not proper to elevate one purpose above another. *See Pueblo of Picuris v. N. M. Energy, Mins. & Nat. Res. Dep't*, 2001-NMCA-084, ¶ 14, 131 N.M. 166, 33 P.3d 916 ("We indulge in the assumption that when the [L]egislature has before it all sections of a statute at the same time, it intends to give equal weight to each section."). By having the purposes all listed together, the Legislature intended each purpose to carry the same weight; nothing in the language of Section 62-16-2(B)(1)-(3) indicates otherwise. *DeWitt v. Rent-A-Center, Inc.*, 2009-NMSC-032, ¶ 29, 146 N.M. 453, 212 P.3d 341 ("The first and most obvious guide to statutory interpretation is the wording of the statutes themselves."). We conclude the only interpretation that gives equal weight to each purpose is that the Threshold must operate as the point in which utilities may not incur new renewable energy costs.

**{18}** To "protect public utilities *and their ratepayers* from renewable energy costs that are *above* a [Threshold,]" the Threshold must act as a limit for utilities to incur new renewable energy costs. Section 62-16-2(B)(3) (emphasis added). This is because if utilities could indiscriminately exceed the Threshold, ratepayers would not be protected from those costs and the Act's purpose would go unfulfilled. The plain language of Section 62-16-2(B)(3) does not elevate either utilities or ratepayers; it treats them equally. *Id.* Because of this, both utilities and ratepayers should be shielded from renewable energy costs above the Threshold. That said, to carry out the other two purposes—proscribing the amount of renewable energy public utilities shall include in their portfolios and allowing utilities to recover costs through the rate-making process—the Legislature needed to make it mandatory for utilities to procure renewable energy if the costs for doing so would not exceed the Threshold. This is done by Section 62-16-4(B) (2014).

**{19}** Section 62-16-4(B) (2014) provides,

> If . . . , in any given year, the cost of renewable energy that would need to be procured or generated for purposes of compliance with the [Portfolio Standard] *would be greater than the [Threshold]* as established by the [C]ommission pursuant to this section, the public utility *shall not be required* to incur that cost . . . . When a public utility can generate or procure renewable energy *at or below the [Threshold]*, it *shall be required* to add renewable energy resources to meet the [Portfolio Standard] applicable.

(Emphasis added.) By requiring public utilities to procure renewable energy "at or below" the Threshold, the Legislature could ensure that the Portfolio Standard would be

met. *Id.* But if the cost of renewable energy would "be greater than" the Threshold, the public utility "shall not be required" to incur the cost. *Id.* El Paso Electric's argument that the "shall not be required" language reflects that the Commission cannot require utilities to procure renewable energy if the costs would exceed the Threshold, but utilities have discretion to do so, is unpersuasive. This would elevate utilities above ratepayers and render the Act's purpose to protect ratepayers from costs above the Threshold obsolete. *See State v. Herrera*, 1974-NMSC-037, ¶ 8, 86 N.M. 224, 522 P.2d 76 ("We attempt to construe statutes so that meaning and effect will be given to every part thereof."). Furthermore, Commission regulations do not support such an interpretation.

{20}   17.9.572.12 NMAC (5/31/2013) provides that the Threshold "is a customer protection mechanism that limits the customer bill impact." Under 17.9.572.12(D) NMAC (5/31/2013) if a public utility believes the procurement of renewable energy will exceed the Threshold it "*shall file* with the [C]ommission a request for waiver of the [Portfolio Standard.]" (Emphasis added.) This creates a process by which a utility is mandated to request a Commission issued waiver for the Portfolio Standard if the procurement of renewable energy would push costs over the Threshold. *Id.* This mandatory waiver is a way to implement the Threshold and ensure ratepayers are protected from any costs that would exceed it.

{21}   By approving of new renewable energy costs when El Paso Electric's costs for compliance of the Portfolio Standard were more than double the percentage allowed by the Threshold, the final order violated the consumer protection provisions of the Act.

## III.   CONCLUSION

{22}   The Commission's final order is reversed and the case is remanded to the Commission.

{23}   **IT IS SO ORDERED.**

**MICHAEL E. VIGIL, Chief Justice**

**WE CONCUR:**

**C. SHANNON BACON, Justice**

**DAVID K. THOMSON, Justice**